FILED
2017 Jun-20  AM 11:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| HIBBETT SPORTING GOODS, INC. and HIBBETT HOLDINGS, LLC<br><br>    Plaintiffs,<br><br>v.<br><br>SOCK AND ACCESSORY BRANDS GLOBAL, INC. and SHOEBACCA LTD.<br><br>    Defendants. | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

COME NOW Hibbett Sporting Goods, Inc. and Hibbett Holdings, LLC and, for their Complaint against Sock and Accessory Brands Global, Inc. and Shoebacca Ltd., state as follows:

**PARTIES**

1.      Hibbett Sporting Goods, Inc. ("Hibbett Sporting Goods") is a corporation organized under the laws of the State of Delaware and registered to do business in the State of Alabama. The address of Hibbett Sporting Goods' principal place of business is 2700 Milan Court, Birmingham, Alabama 35211. Hibbett Sporting Goods' principal place of business is in Jefferson County, Alabama.

2.      Hibbett Holdings, LLC ("Hibbett Holdings" and, together with Hibbett Sporting Goods, "Hibbett" or "Plaintiffs") is a limited liability company

organized under the laws of the State of Alabama. The address of Hibbett Holdings' principal place of business is 201 Corporate Woods Drive, Alabaster, Alabama 35007. Hibbett Holdings' principal place of business is in Shelby County, Alabama. Hibbett Holdings is a wholly owned subsidiary of Hibbett Wholesale, Inc. which is a wholly owned subsidiary of Hibbett Sporting Goods.

3.     Upon information and belief, Sock and Accessory Brands Global, Inc. ("SABG") is a corporation organized under the laws of the State of Delaware.

4.     Upon information and belief, the address of SABG's principal place of business is 5380 Highway 158, Suite 250, Advance, North Carolina 27006 in Davie County.

5.     Upon information and belief, the address, Shoebacca Ltd. ("Shoebacca") is a limited partnership organized under the laws of the State of Texas.

6.     Upon information and belief, the address of Shoebacca's principal place of business is 2205 East Pioneer Drive, Irving, Texas 75061 in Dallas County.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over the claims asserted by Plaintiffs under 28 U.S.C. §§ 1331 and 1338(a) because Plaintiffs' claims and right to relief arise primarily under the Lanham Act, 15 U.S.C. §§ 1051-1127. This

Court additionally has supplemental jurisdiction over the Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

8.      This Court has authority to declare the rights and legal relations of the parties through declaratory judgments under 28 U.S.C. § 2201(a).

9.      This Court has authority to issue injunctions and other equitable relief under 28 U.S.C. § 2202 and 15 U.S.C. §§ 1116(a).

10.     Upon information and belief, SABG is subject to personal jurisdiction in the Northern District of Alabama (the "District"), consistent with the principles of due process and the Alabama Long Arm Statute, because SABG entered into contracts and had a substantial continuing business relationship with a company located in this District. Further, SABG breached the contracts and infringed Plaintiffs' trademarks knowing that the harm would be felt by Plaintiffs in this District.

11.     This Court has personal jurisdiction over Shoebacca because Shoebacca has purposefully availed itself of the privilege of doing business in this district. Upon information and belief, Shoebacca owns and operates an interactive website that is accessible by Internet users in this district and offers its services and products to residents of Alabama and this judicial district. The infringing products at issue that Shoebacca advertises and offers, and makes available to purchasers through its website, are capable of being ordered by and shipped to purchasers in

Alabama and, upon information and belief, Shoebacca has made sales in Alabama and this judicial district, and has delivered its products there.

12.    "An entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . ." U.S.C. § 1391(c)(2). The Defendants reside within this district and a substantial part of the events or omissions giving rise to the Plaintiffs' claims herein occurred within this district. Thus, venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)(1) & (2).

13.    Venue is also proper in this judicial district with respect to SABG because SABG contractually agreed to comply with the terms of Hibbett Wholesale Inc.'s Vendor Compliance Manual, which contains a choice of law provision. The choice of law provision provides: "Should a dispute arise between Hibbett (or any related entities, subsidiaries or parent companies of Hibbett) and Vendor regarding these terms and conditions or any sale of Goods to Hibbett from Vendor, these terms and conditions shall be governed by and construed in accordance with the laws of the state of Alabama, and any dispute shall resolved in the State or Federal Courts located in Birmingham, Alabama."

## NATURE OF THE ACTION

14.    This is a civil action for Lanham Act violations, common law trademark infringement, trademark dilution, and other state-law claims.

15.    By this action, Plaintiffs seek declaratory and equitable relief for Defendants' infringement of Plaintiffs' trademarks, as well as for SABG's breach of contract.

## FACTUAL BACKGROUND

16.    Hibbett Holdings is the owner of all right, title, and interest in and to certain intellectual property relating to the operation of Hibbett Sporting Goods' retail sales business featuring sporting goods equipment, sports fan licensed apparel and goods, footwear, athletic apparel, and sports medicine and health/wellness products, and the distribution and sale of such goods, including but not limited to trademarks, service marks, tradenames, logos, and other proprietary designations, as well as trade dress, know how, and confidential information (the "Hibbett Intellectual Property"). Hibbett Holdings also owns several domain names and social media accounts, including, but not limited to www.hibbett.com, www.facebook.com/HibbettSports, @HibbettSports, instagram.com/hibbettsports# and www.pinterest.com/hibbettsports (the "Hibbett Social Media").

17.     The Hibbett Intellectual Property includes various common law and federally registered trademarks, including, *inter alia*, the word marks HIBBETT and HIBBETT SPORTS and variations thereof (the "Hibbett Marks").

18.     Hibbett Holdings is the owner of the following federal trademark registrations for use in connection with "retail store services, namely sporting goods, clothing and footwear" in International Class 035:

| Mark | Registration Number | Registration Date |
|---|---|---|
| HIBBETT | 3,275,037 | August 7, 2007 |
| HIBBETT SPORTS | 2,717,584 | May 20, 2003 |

True and correct copies of the registration information for these two federally registered marks are attached hereto as Exhibit 1.

19.     Hibbett Sporting Goods is a licensee of the Hibbett Marks.

20.     Hibbett, directly or through their predecessors, has been in the retail store business since at least 1945. Hibbett has been using and enforcing the Hibbett Marks since at least as early as 1965. Hibbett has become a major retailer and team supplier of all types of sporting goods equipment, sports fan licensed apparel and goods, footwear, athletic apparel, and sports medicine and health/wellness products. Hibbett currently operates 1082 retail stores in 35 states in the United States, including 94 stores in Alabama.

21.    As a result of the high quality of Hibbett's stores, merchandise, and services rendered in the retail industry, and the extensive promotion and public acceptance thereof, Hibbett has gained significant and valuable goodwill for its Hibbett Marks.

22.    The Hibbett Marks are known generally to the public to identify Hibbett's goods and services and to distinguish them from the products and services of others. The Hibbett Marks function as an indicator of origin for Hibbett's products and services, and as such, are the exclusive property of Hibbett.

23.    Upon information and belief, SABG is a hosiery and accessories design, product development, and distribution company.

24.    Upon information and belief Shoebacca is a discount shoe, apparel, and accessories retailer. Shoebacca sells its goods through shoebacca.com and various other online retailers including, but not limited to, sears.com, walmart.com, and amazon.com.

25.    Hibbett Sporting Goods has continuously done business with SABG, regularly using SABG as a vendor for manufacturing certain goods.

26.    In 2011, SABG agreed to manufacture certain basketball crew socks for, and according to specifications provided by, Hibbett Sporting Goods (the "Infringing Socks").

27.    The Infringing Socks include the Hibbett Marks printed on descriptive tags attached to the front and back of the Infringing Socks and woven into interior of the garments.

28.    The Infringing Socks include a ® mark next to the Hibbett Marks located on the descriptive tags attached to the front and back of the garments.

29.    Prior to manufacturing the Infringing Socks, SABG was provided, and contractually agreed to the terms of, Hibbett Wholesale Inc.'s Vendor Compliance Manual. A copy of the Vendor Compliance Manual is attached hereto as Exhibit 2. The relevant portions have not been amended since the allegations at issue.

30.    As is common in the trade, page 31, paragraph 12 of the Vendor Compliance Manual states: "Vendor may not resell any Goods, including cancelled product, overstocks, overruns, defectives, and irregulars, which incorporate Hibbett's intellectual property, labels or marks without (i) prior written approval of Hibbett and (ii) removal of all such intellectual property, marks and labels."

31.    After SABG completed production of the Infringing Socks, Hibbett Sporting Goods decided against selling the sock.

32.    Hibbett Sporting Goods cancelled the order and returned all the Infringing Socks to SABG, receiving credit for the order.

33.     In 2011, following the cancellation of the order, Hibbett Sporting Goods and SABG entered into an agreement authorizing SABG to offer the unsold stock of the Infringing Socks exclusively to accounts for non-domestic distribution.

34.     Two years later, in or around August 2013, SABG requested authorization from Hibbett Sporting Goods to sell its remaining unsold stock of the Infringing Socks domestically.

35.     SABG reported to Hibbett Sporting Goods that it had approximately 50,000 unsold packs of the Infringing Socks it sought to sell domestically.

36.     On September 12, 2013, Hibbett Sporting Goods informed SABG by e-mail that SABG was not authorized to sell the Infringing Sock domestically.

37.     Despite Hibbett Sporting Goods denying authorization, upon information and belief, SABG sold or offered for sale the Infringing Socks to multiple domestic retailers including, but not limited to, K-Mart and Shoebacca.

38.     To date, Hibbett Sporting Goods understands the Infringing Sock is available for purchase at certain K-Mart retailers, and through various online retail stores, including amazon.com, walmart.com, and sears.com. Shoebacca is listed as the seller for all known online retail stores. Images of the Infringing Socks offered for sale at the Morganton, North Carolina K-Mart are attached hereto as Exhibit 3.

39.     SABG did not receive prior written approval or authorization of any kind from Hibbett Sporting Goods to sell the Infringing Socks domestically.

40.     Upon information and belief, SABG did not remove the Hibbett Marks from the Infringing Socks prior to making the unauthorized domestic sales.

41.     Shoebacca has offered and continues to offer the Infringing Socks for sale on multiple internet retailing sites including, but not limited to, amazon.com, walmart.com, and sears.com. Images of the Infringing Socks offered for sale on amazon.com, walmart.com, and sears.com are attached hereto as Exhibit 4.

42.     Upon information and belief, Shoebacca has sold the Infringing Socks through its online retail services.

## <u>COUNT ONE</u>
## FEDERAL TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1114(1)

43.     Plaintiffs adopt and re-allege the paragraphs above as if set forth fully herein.

44.     Hibbett Holdings is the owner of the federally registered Hibbett Marks. Continuously since 1965, Hibbett or its predecessors, have used the Hibbett Marks to identify its retail store services and goods, and to distinguish its goods and retail services from the retail services and goods of others.

45.     As a regular manufacturer of goods for Hibbett Sporting Goods, SABG has at all times been on notice of the Plaintiffs' rights in the Hibbett Marks.

46.     Because the Infringing Socks also include a ® mark next to the Hibbett Marks, both SABG and Shoebacca have at all times been on notice of the Plaintiffs' rights in the Hibbett Marks.

47.     Defendants' unauthorized uses of the Hibbett Marks in commerce as alleged herein are likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' Infringing Socks, and is likely to cause consumers to believe, contrary to fact, that Defendants' Infringing Socks are sold, authorized, endorsed, or sponsored by Plaintiffs, or that Defendants are in some way affiliated with or sponsored by Plaintiff.

48.     On information and belief, Defendants' heretofore alleged acts of trademark infringement have been committed with the intent to cause confusion, mistake, and to deceive.

49.     Unless restrained and enjoined, Defendants' conduct will continue their acts of trademark infringement set forth above, thereby deceiving and confusing the public, and causing immediate and irreparable harm and injury to Plaintiffs' business, reputation, and goodwill. Plaintiffs have no adequate remedy at law.

50.     Plaintiffs are also entitled to an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, interest, the costs of this action, and such other relief as this Court deems appropriate.

## COUNT TWO
## COMMON LAW TRADEMARK INFRINGEMENT

51.     Plaintiffs adopt and re-allege the paragraphs above as if set forth fully herein.

52.     Hibbett Holdings is the owner of the Hibbett Marks used in connection with retail store services featuring sporting goods equipment, sports fan licensed apparel and goods, athletic apparel, and footwear, as well as the distribution and sale of certain branded goods. Hibbett directly or through its predecessors have used the Hibbett Marks in commerce continuously since 1965 in conjunction with their retail store services and, as a result, consumers have come to associate the Hibbett Marks with goods and services provided by Hibbett. As a result of this association, the Hibbett Marks have engendered significant goodwill and, further, the Hibbett Marks have become famous.

53.     Defendants' use of the Hibbett Marks in commerce as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' Infringing Socks, and is likely to cause consumers to believe, contrary to fact, that Defendants' Infringing Socks are sold, authorized, endorsed, or sponsored by Plaintiffs, or that Defendant is in some way affiliated with or sponsored by Plaintiff.

54.     Defendants' unauthorized use of the Hibbett Marks causes consumer confusion as to the source of the goods provided by Defendants. Accordingly,

Defendants' actions constitute common law trademark infringement of the Hibbett Marks.

55.     Defendants' actions have been willful and deliberate, as evidenced by Defendants' ongoing sale of the Infringing Socks, which include the Hibbett Marks.

56.     Defendants' actions have harmed Plaintiffs' valuable intellectual property rights, have damaged Plaintiffs' goodwill, and have caused Hibbett to suffer damages that are not calculable in monetary terms.

57.     Unless restrained and enjoined, Defendants' conduct will continue their acts of trademark infringement set forth above, thereby deceiving and confusing the public, and causing immediate and irreparable harm and injury to Plaintiffs' business, reputation, and goodwill. Plaintiffs have no adequate remedy at law.

58.     Plaintiffs are also entitled to an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, interest, the costs of this action, and such other relief as this Court deems appropriate.

**COUNT THREE**
**TRADEMARK DILUTION PURSUANT TO**
**15 U.S.C. § 1125(c)**

59.     Plaintiffs adopt and re-allege the paragraphs above as if set forth fully herein.

60.     Hibbett Holdings is the owner of the federally registered Hibbett Marks. Continuously since 1965, Hibbett or its predecessors, have used the Hibbett Marks to identify its retail store services and goods, and to distinguish its goods and retail services from the retail services and goods of others.

61.     Due to Plaintiffs' extensive advertising and publicity of the Hibbett Marks within the United States, the amount, volume, and geographic extent of sales offered under the Hibbett Marks within the United States, and the fact that the general consuming public widely recognizes the association between the Hibbett Marks and the goods offered under the Hibbett Marks, the Hibbett Marks have become "famous" within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

62.     The Hibbett Marks became distinctive and famous prior to Defendants' commercial use of the Hibbett Marks.

63.     Defendants' commercial use of the Hibbett Marks as alleged herein have diluted and will, unless enjoined, continue to dilute and are likely to dilute the distinctive quality of the famous Hibbett Marks.

64.     Defendants' commercial use of the Hibbett Marks as alleged herein have tarnished and will, unless enjoined, continue to tarnish, and are likely to tarnish the Hibbett Marks by undermining and damaging the valuable goodwill associated therewith.

65.     Upon information and belief, Defendants willfully intended to cause dilution, with the intent to blur and/or tarnish the Hibbett Marks.

66.     Defendants' trademark dilution has and will continue to cause immediate and irreparable harm, damage, and injury to Plaintiffs', and Plaintiffs have no adequate remedy at law for the aforementioned irreparable harm. Accordingly, Plaintiffs are entitled to injunctive relief.

67.     Plaintiffs are also entitled to, among other relief, an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, interest, the costs of the action, and such other relief as this Court deems appropriate.

## COUNT FOUR
## TRADEMARK DILUTION PURSUANT TO
## ALA. CODE § 8-12-17

68.     Plaintiffs adopt and re-allege the paragraphs above as if set forth fully herein.

69.     Hibbett Holdings is the owner of several federally registered trademarks. Continuously since 1965, Hibbett or its predecessors, have used the Hibbett Marks to identify its retail store services and goods, and to distinguish its goods and retail services from the retail services and goods of others.

70.     Due to Hibbett's extensive advertising and publicity of the Hibbett Marks within the State of Alabama, the amount, volume, and geographic extent of

sales offered under the Hibbett Marks within the entirety of the borders of the State of Alabama, and the fact that the general public of the State of Alabama widely recognizes the association between the Hibbett Marks and the goods offered under the Hibbett Marks, the Hibbett Marks have become "famous" throughout the State of Alabama. *See* Ala. Code § 8-12-17(b).

71.    The Hibbett Marks became distinctive and famous prior to Defendants' commercial use of the Hibbett Marks.

72.    Defendants' commercial use of the Hibbett Marks as alleged herein have diluted and will, unless enjoined, continue to dilute and are likely to dilute the distinctive quality of the famous Hibbett Marks.

73.    Defendants' commercial use of the Hibbett Marks as alleged herein have tarnished and will, unless enjoined, continue to tarnish, and are likely to tarnish the Hibbett Marks by undermining and damaging the valuable goodwill associated therewith.

74.    Upon information and belief, Defendants willfully intended to cause dilution, with the intent to blur and/or tarnish the Hibbett Marks.

75.    Defendants' trademark dilution has and will continue to cause immediate and irreparable harm, damage, and injury to Hibbett, and Hibbett has no adequate remedy at law for the aforementioned irreparable harm. Accordingly, Plaintiffs are entitled to injunctive relief throughout the State of Alabama.

76.     Plaintiffs are also entitled to, among other relief, an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, interest, the costs of the action, and such other relief as this Court deems appropriate.

## COUNT FIVE
## UNFAIR COMPETITION IN VIOLATION
## OF 15 U.S.C. § 1125(a)(1)

77.     Plaintiffs adopt and re-allege the paragraphs above as if set forth fully herein.

78.     Defendants' commercial use of the Hibbett Marks as alleged herein is a false designation of origin which is likely to cause confusion, to cause mistake and to deceive as to the affiliation, connection or association of Defendants with Plaintiffs and as to the origin, sponsorship, or approval of such goods by Plaintiffs.

79.     On information and belief, Defendants' heretofore alleged acts of false designation of origin have been committed with the intent to cause confusion, mistake and to deceive.

80.     By reason of Defendants' actions, Hibbett has and will suffer damage to their business, reputation, and goodwill.

81.     Unless restrained and enjoined, Defendants will continue to do the acts complained of herein, all to Hibbett's irreparable damage. Hibbett has no adequate remedy at law for the aforementioned irreparable harm.

82.    Plaintiffs are also entitled to, among other relief, an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, interest, the costs of the action, and such other relief as this Court deems appropriate.

**COUNT SIX**
**COMMON LAW UNFAIR COMPETITION**

83.    Plaintiffs adopt and re-allege the paragraphs above as if set forth fully herein.

84.    Defendants' commercial use of the Hibbett Marks alleged herein is designed to cause an association between Plaintiffs' and Defendants' goods and is likely to cause confusion.

85.    Defendants' action constitute unfair competition by "palming off" under Alabama law.

86.    Defendants seek to "palm off" the Infringing Socks as being offered by, approved by, affiliated with, or endorsed by Plaintiffs.

87.    Upon information and belief, Defendants acted intentionally or, at least, recklessly and without regard to the effect of their actions.

88.    Defendants' actions have and will continue to cause immediate and irreparable harm, damage, and injury to Plaintiffs. Plaintiffs have no adequate remedy at law for the aforementioned irreparable harm.

89.     Plaintiffs are entitled to damages in an amount to be determined at trial, an award for its reasonable attorneys' fees, the costs of this action, interest, and such other relief as this Court deems appropriate.

<u>**COUNT SEVEN**</u>
**BREACH OF CONTRACT AGAINST SABG**

90.     Plaintiffs adopt and re-allege the paragraphs above as if set forth fully herein.

91.     Pursuant to the Vendor's Compliance Manual and the 2011 agreement between Hibbett Sporting Goods and SABG, before selling the Infringing Socks domestically, SABG was required to receive prior written approval of Hibbett Sporting Goods and remove all intellectual property, marks, and labels from the Infringing Socks.

92.     On information and belief, SABG breached the provisions of the Vendor's Compliance Manual and the 2011 agreement between Hibbett Sporting Goods and SABG by selling the Infringing Socks domestically despite being informed by Hibbett Sporting Goods that SABG was not authorized to make domestic sales, and failing to remove the Hibbett Marks from the Infringing Socks prior to the domestic sales.

93.     Plaintiffs are entitled to recover the damages suffered as a result of the breach, plus attorneys' fees, and costs as a result of SABG's breach.

## PRAYER FOR RELIEF

Based on the foregoing, Hibbett respectfully requests that the Court enter judgment in favor of Plaintiffs and against Defendants on all counts and causes of action and in that judgment grant Hibbett the following relief:

a) Entry of a permanent injunction prohibiting Defendants, their members, agents, servants, employees, attorneys and all persons in active concert or participation with them from selling or offering for sale the Infringing Socks to any and all domestic retailers or accounts of any sort;

b) Entry of an order requiring Defendants to file with the Court and to serve on Hibbett, within 30 days after the entry of any permanent injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

c) Damages for Defendants' trademark infringement, trademark dilution and unfair competition;

d) Treble damages pursuant to 15 U.S.C. § 1117(a);

e) Damages for SABG's breach of contract;

f) An award to Hibbett of the costs of suit and their reasonable attorneys' fees; and

g) An order granting such other and further relief as the Court deems just and proper.

This the 19th day of June, 2017.

Respectfully Submitted,

STARNES DAVIS FLORIE, LLC

*/s/ Jay M. Ezelle*_____
Jay M. Ezelle (ASB-4744-Z72J)
Michael R. Lasserre (ABS-2144-Y61G)
100 Brookwood Place, 7th Floor
P.O. Box 598512
Birmingham, AL  35259-8512
jme@starneslaw.com
mrl@starneslaw.com

*Attorneys for Plaintiffs Hibbett Sporting*
*Goods, Inc. and Hibbett Holdings, LLC*

## PLEASE SERVE THE DEFENDANTS VIA CERTIFIED MAIL AT THE FOLLOWING ADDRESS:

*Registered Agent for SABG*:
Corporation Service Company
2711 Centerville Rd Suite 400
Wilmington, DE 19808

*Registered Agent for Shoebacca:*
Marc Schlachter
Shoebacca Ltd.
520 N. Wildwood
Irving, TX 75061-8800