UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **HIBBETT SPORTING GOODS, INC., et al.,** } | |
| } | |
| Plaintiffs, } | |
| } | Case No.: 2:17-cv-01029-RDP |
| v. } | |
| } | |
| **SOCK & ACCESSORY BRANDS GLOBAL, INC., et al.,** } | |
| } | |
| Defendants. | |

### MEMORANDUM OPINION

This matter is before the court on Defendant Shoebacca, Ltd.'s Motion to Dismiss. (Doc. # 17). Plaintiffs have responded to the Motion. (Doc. # 21).

**I.    Background**

Plaintiffs Hibbett Sporting Goods, Inc. and Hibbett Holdings, LLC own and/or license certain federal trademarks. (Doc. # 1 at 6). Former Defendant Sock and Accessory Brands Global, Inc. ("SABG")[1] is a hosiery and accessories design, product development, and distribution company. (Doc. # 1 at 8). In 2011, SABG agreed to manufacture certain basketball crew socks ("the Infringing Socks") for Plaintiff. The Infringing Socks include the Hibbett Marks printed on descriptive tags attached to the front and back and woven into interior of the garments. The Socks also include a ® mark next to the Hibbett Marks. (Doc. # 1 at 8). SABG had agreed to Hibbett Wholesale Inc.'s Vendor Compliance Manual, which provides that: "Vendor may not resell any Goods, including cancelled product, overstocks, overruns, defectives, and irregulars, which incorporate Hibbett's intellectual property, labels or marks

---

[1] On November 13, 2017, Plaintiffs filed a Notice of Voluntary Pro Tanto Dismissal of SABG. (Doc. # 22). That same day, Plaintiffs' claims against SABG were dismissed. (Doc. # 23).

without (i) prior written approval of Hibbett and (ii) removal of all such intellectual property, marks and labels." (Doc. # 1 at 8).

After SABG completed production of the Infringing Socks, Hibbett Sporting Goods decided against selling the sock. Hibbett cancelled the order and returned all the Infringing Socks to SABG, receiving credit for the order. (Doc. # 1 at 8). Hibbett and SABG entered into an agreement authorizing SABG to offer the unsold stock of the Infringing Socks exclusively to accounts for *non-domestic* distribution. (Doc. # 1 at 9).

In or around August 2013, SABG requested authorization from Hibbett to sell its remaining unsold stock of the Infringing Socks domestically. (Doc. # 1 at 9). On September 12, 2013, Hibbett informed SABG by e-mail that it was not authorized to sell the Infringing Sock domestically. (Doc. # 1 at 9). Despite Hibbett denying authorization for domestic sales, SABG sold the Infringing Socks to multiple domestic retailers including, but not limited to, K-Mart and Defendant Shoebacca Ltd. (Doc. # 1 at 9). SABG did not remove the Hibbett Marks from the Infringing Socks prior to making the unauthorized domestic sales. (Doc. # 1 at 10).

Shoebacca is a discount shoe, apparel, and accessories retailer. (Doc. # 1 at 8). Plaintiff alleges that Shoebacca has sold the Infringing Socks, including domestically, through its online retail services. (Doc. # 1 at 10).

## II. Standard of Review

The Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not

meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in a complaint in the light most favorable to the non-moving party. *Watts v. Fla. Intl. Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 Fed. Appx. 136, 138 (11th Cir. 2011) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Twombly*, 550 U.S. at 556. Further, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental*,

605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 682). If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 556.

### III. Analysis

Plaintiff's Complaint contains the following claims against Shoebacca: (1) Count One - Federal Trademark Infringement in Violation of 15 U.S.C. § 1114(1); (2) Count Two - Common Law Trademark Infringement; (3) Count Three - Trademark Dilution Pursuant to 15 U.S.C. § 1125(c); (4) Count Four - Trademark Dilution Pursuant to Ala. Code § 8-12-17; (5) Count Five - Unfair Competition in Violation of 15 U.S.C. § 1125(a)(1); and (6) Count Six - Common Law Unfair Competition. (Doc. # 1).

In support of its Motion to Dismiss, Shoebacca makes the following arguments: (1) that Plaintiffs' claims are barred as a matter of law because trademark law does not reach the sale of genuine goods bearing a true mark, even if such sale is without the mark owner's consent; and (2) Plaintiffs' rejection of the Infringing Socks for a credit constitutes a "sale" back to SABG which bars Plaintiffs' claims under the First Sale Doctrine.[2] (Doc. # 17).

Plaintiff responds that (1) the Infringing Socks were not genuine goods because SABG's sale of the socks was not authorized, and (2) that Plaintiffs' return of the Socks to SABG was not a "sale," and therefore the First Sale Doctrine is inapplicable. (Doc. # 21).

    **A.    The Complaint Sufficiently Alleges that the Infringing Socks Are Not Genuine Goods**

First, Shoebacca argues that there is no violation of the Lanham Act because the Infringing Socks are "genuine." "It is true that the unauthorized sale of a genuine trademarked product does not in itself constitute trademark infringement." *Caterpillar, Inc. v. Nationwide*

---

[2] Defendant makes these arguments with regard to Plaintiffs' Lanham Act claims, and then proceeds to argue that the same considerations bar Plaintiffs' state law claims. (Doc. # 1 at 9).

4

*Equip.*, 877 F. Supp. 611, 615 (M.D. Fla. 1994) (citing *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104 (4th Cir. 1991); *NEC Electronics v. CAL Circuit Abco*, 810 F.2d 1506 (9th Cir.), *cert. denied*, 484 U.S. 851 (1987); *Babbit Electronics v. Dynascan Corp.*, 828 F.Supp. 944, 956 (S.D.Fla. 1993). "However, 'identical goods sold in an unauthorized manner are not genuine for purposes of the Lanham Act.'" *Caterpillar*, 877 F. Supp. at 615 (quoting *H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.*, 879 F.2d 1005, 1023 (2d Cir. 1989)). And, goods manufactured by agreement with the holder of a trademark, but distributed without the holder's authorization, are not considered genuine for purposes of trademark protection. *El Greco Leather Products Co., Inc. v. Shoe World, Inc.*, 806 F.2d 392 (2d Cir. 1986), *cert. denied*, 484 U.S. 817 (1987).

The Complaint alleges that Plaintiffs ordered, but then "decided against selling the sock." (Doc. # 1 at 8). Under Plaintiffs' Purchase Agreement and Vendor Compliance Manual, SABG was permitted to resell the rejected socks if it first "(i) [obtained] prior written approval of Hibbett and (ii) remov[ed] all . . . intellectual property, marks and labels." (Doc. # 1 at ¶ 30). The Complaint alleges that Plaintiffs gave written permission to sell the socks to accounts for *non-domestic* distribution. (Doc. # 1 at 9). SABG later requested permission to distribute domestically, but that request was denied. (Doc. # 1 at 9). The Infringing Socks were then sold domestically without authorization, and without removal of Plaintiffs' marks. Because the Complaint alleges that the Infringing Socks were sold in an unauthorized manner, it plausibly states a claim that the Infringing Socks are not genuine, and therefore Plaintiffs' claims are not barred as constituting a resale of genuine goods.

### B. The Court Cannot Say as a Matter of Law that Plaintiffs' Return of the Socks to SABG Was a First Sale

Second, Shoebacca argues that Plaintiffs' claims are barred by the First Sale Doctrine. (Doc. # 17 at 9). "The *resale* of genuine trademarked goods generally does not constitute [trademark] infringement." *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1301 (11th Cir. 2001) (emphasis added) (citing *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587, 590 (5th Cir. 1993); *NEC Electronics v. CAL Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987)). "Under what has sometimes been called the 'first sale' or 'exhaustion doctrine', the trademark protections of the Lanham Act are exhausted after the trademark owner's first authorized sale of that product." *Davidoff & CIE*, 263 F.3d at 1301–02 (citing *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 301 n. 4 (3d Cir. 1998); *Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1085; *Allison v. Vintage Sports Plaques*, 136 F.3d 1443, 1447-48 (11th Cir. 1998)).

Defendant argues that Plaintiffs' trademark protections under the Lanham Act were exhausted because the sale back to SABG constitutes the first "sale" of the Infringing Socks. (Doc. # 17 at 9). But, this argument is based on a tortured reading of Plaintiffs' Complaint. Rather than a "sale" to SABG, the Complaint alleges that "Hibbett Sporting Goods decided against selling the sock [and] cancelled the order and returned all the Infringing Socks to SABG, receiving credit for the order." (Doc. # 1 at 8). The return and decision not to sell the Socks is not analogous to an authorized first sale of genuine trademarked goods. Interestingly, Defendant has not provided the court with any legal authority supporting the conclusion that a return constitutes a first sale under the Lanham Act. The court simply cannot conclude that, as a matter of law, the "return" at issue here constitutes a "sale" under the first sale doctrine.

**IV.    Conclusion**

The claims in Plaintiffs' Complaint are plausibly pled and supported by sufficient factual content that allows the court to draw the reasonable inference that Shoebacca may be liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678. Therefore, Shoebacca's Motion to Dismiss (Doc. # 17) is due to be denied.

**DONE** and **ORDERED** this January 29, 2018.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE